**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| **MELVIN HARRIS,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ST. LOUIS COUNTY,**<br>**Serve:**<br>**41 South Central**<br>**Clayton, MO 63105**<br><br>**AND**<br><br>**STANLEY DOOLEY,**<br>**Individually and in his official capacity,**<br><br>**Defendants,**<br><br>**Serve All Defendants at:**<br>**41 South Central**<br>**Clayton, MO 63105** | ) | **Case No.**<br>**JURY DEMAND** |

**AMENDED COMPLAINT FOR DAMAGES PURSUANT TO RULE 15(a)**

COMES NOW Plaintiff Melvin Harris, by and through his attorney Thomas Peterson and in support of his Complaint against Defendants St. Louis County and Officer Stanley Dooley states to this Court as follows:

**PARTIES**

1. Plaintiff Melvin Harris (hereinafter "Plaintiff") was at all times mentioned herein a resident of St. Louis County, Missouri.
2. Defendant Stanley Dooley (hereinafter "Dooley"), was at all times mentioned herein acting as a sworn police officer employed by the St. Louis County Police Department.

3. Defendant St. Louis County (hereinafter "County") is a governmental entity within the State of Missouri which funds, directs, controls, and operates the St. Louis County Police Department.
4. Defendant County is responsible for development and implementation of the policies, procedures, training of officers, practices, and customs of the St. Louis County Police Department.

## **JURISDICTION AND VENUE**

5. Venue and jurisdiction are proper in the Circuit Court of St. Louis County as this cause of action arose from events occurring in St. Louis County, Missouri and the amount in question exceeds $50,000.00.

## **ALLEGATIONS COMMON TO ALL COUNTS**

6. At all times during the incident defendants were acting as part of the "Special Response Unit" (hereinafter "SRU") which is a special unit within the Bureau of Tactical Operations within the St. Louis County Police Department.
7. Upon information and belief, following the 2014 protests in Ferguson, Missouri, and continuing civil unrest leading up to this incident, Defendant County established within its SRU individual "Civil Disturbance Response Teams" (hereinafter "Teams") in an effort to combat ongoing civil unrest at a quicker pace.
8. The Teams were composed of St. Louis County Police Department Officers who were trained and employed to focus on managing protests and civil unrest.

9. The Teams, under the direction and guidance of Defendant County ~~and~~ through the St. Louis County Police Department, developed and adopted specialized policies and procedures for its member officers.

10. Police response to ongoing protests in both St. Louis County and St. Louis City has been fraught with violence as officers routinely deploy broad brush measures of excessive force against civilians.

11. When responding to protests or situations of civil unrest, Teams officers are armed and equipped with special tactical gear.

12. Upon information and belief, the Teams developed and enforced policies and procedures which encouraged officers to rapidly escalate use of force against protestors and civilians alike.

13. Upon information and belief, these policies and procedures had no clear structure or guidelines leaving officers improperly trained.

14. Upon information and belief, the Teams officers were not properly trained.

15. Upon information and belief, between 2014 and 2020, the Teams were ~~exclusively~~ assigned to situations involving local protest and civil unrest resulting from national police involved incidences and news.

16. The June 2, 2020 incident involved protests and civil unrests involving the death of George Floyd.

17. Upon information and belief, between 2014 and 2020, tensions between civilians and the SRU and Teams persisted.

18. On or about June 2, 2020, Plaintiff was operating a vehicle which was present in the area of protests and civil unrest occurring in St. Louis City.

19. Plaintiff had two additional passengers in his vehicle.

20. St. Louis City Police claimed gun shots were fired from this vehicle.

21. No one has ever been charged with these alleged gunshots.

22. St. Louis City Police began to chase Plaintiff's vehicle.

23. St. Louis City broke off the chase of the vehicle.

24. As the vehicle travelled into St. Louis County, Teams officers, including Defendant Dooley, reengaged the pursuit of the vehicle.

25. Plaintiff's vehicle stopped at a dead-end street in Berkley Neighborhood in St. Louis, County, and Plaintiff and passengers fled the vehicle on foot.

26. All parties fled in between two houses at the dead-end street.

27. Behind the houses was a fence and then wood line.

28. This foot pursuit was caught on home security systems.

29. The two passengers fled ahead of plaintiff toward the fence and the wood line.

30. The passengers were ahead of plaintiff and made it to the fence and the wood line before plaintiff.

31. The passengers and plaintiff jumped the fence toward the wood line.

32. Plaintiff was the last one to jump the fence before the wood line.

33. Plaintiff was unarmed the entire foot pursuit.

34. Defendant Dooley, and two other officers, pursued Plaintiff and his passengers on foot toward the fence and the wood line.

35. During this foot pursuit Dooley had his duty pistol drawn the entire time aiming it toward plaintiff who was the last inline and unarmed.

36. Dooley yelled "get your bitch ass" before firing 13 rounds at plaintiff.

37. Plaintiff sustained 11 gunshot wounds and serious, permanent, and debilitating injuries therefrom.

38. Plaintiff was charged with assault first, armed criminal action, and resisting arrest.

39. Assault first and armed criminal action charges were dismissed by the State of Missouri and Plaintiff pled guilty to one count of resisting arrest as a result of this incident, for which he was sentenced to four years in Missouri Department of Corrections on August 24, 2021.

40. Defendant, St. Louis County, through its Police Department has a standing General order ("Order"). At all relevant times the Order provided that:

> III. USE OF DEADLY FORCE – REGULATIONS
>
> A. Where deadly force is not authorized, officers should assess the incident in order to determine which nondeadly technique or less lethal weapon will best de-escalate the incident and bring it under control in a safe manner. Only the appropriate amount of force necessary to bring an incident under control is authorized. In making an arrest, no more force shall be used than is reasonably necessary for the safe custody of the prisoner or for overcoming any resistance that may be offered and for ensuring the delivery of the prisoner into safekeeping. Officers are not authorized to use chokeholds, neck restraints, shoulder pins or similar weaponless control techniques with a potential for serious injury.

41. Defendant, St. Louis County, by and through its Police Department's order further provides:

> B. Parameters for Use of Nondeadly Force
>
> Officers are authorized to use nondeadly force, including the use of Department approved less lethal weapons for resolution of incidents, as follows:
>
> 1. To protect themselves or another from physical harm; or
> 2. To restrain or subdue a resistant individual; or
> 3. To bring an unlawful situation safely and effectively under control.

42. At all times chasing the unarmed Plaintiff Dooley was holding and pointing his duty pistol at him.
43. At all times chasing unarmed Plaintiff Dooley was in between two homes in a populated subdivision.
44. Dooley claims one of the individuals from plaintiff's car or plaintiff fired a shot.
45. Dooley cannot identify who fired, however Dooley was directly behind plaintiff and Plaintiff was unarmed.
46. At all times Dooley was directly behind Plaintiff.
47. At all times Plaintiff was clearly unarmed.
48. Dooley opened fire on Plaintiff, the closest fleeing suspect who was not a reasonable threat.
49. Dooley opened fire on an unarmed individual as a reaction to the actions of a group regardless of the individual as a reasonable threat.
50. No other officer fired a shot or could tell where the alleged single shot from the others in the group came from.
51. A firearm was retrieved from the woods far away from where unarmed plaintiff was shot and located.
52. The firearm was located beyond plaintiff closer to the wood line where passenger Anthony Taylor (hereinafter "Taylor") was running.
53. The firearm belonged to passenger Anthony Taylor.
54. Taylor plead guilty to possession of the firearm in cause number 20SL-CR02366-01 related to this same incident.

55. Taylor was also charged with assault first and armed criminal action and both of those charges were also dismissed.

56. Taylor plead guilty only to resisting arrest and unlawful possession of a firearm on November 16, 2021 and was sentenced to 7 years in Missouri department of corrections.

**COUNT 1: 42 U.S.C. § 1983 – EXCESSIVE FORCE in Violation of the Fourth and Fourteenth Amendment of the United States Constitution**
**(Defendant Dooley)**

57. Plaintiff restates and realleges each preceding paragraph as though fully set forth herein.

58. At all times alleged herein, Defendant Dooley was a uniformed police officer employed by St. Louis County and acting under color of law.

59. At all times alleged Dooley was a member of the Team and responding to civil unrest in the wake of George Floyd on June 2, 2020.

60. At all times Dooley was equipped with the tactical gear and training from St. Louis County.

61. Upon information and belief, Dooley fired at least 13 shots at plaintiff and plaintiff was unarmed.

62. When Dooley began firing, plaintiff was unarmed and not part of the perceived threat coming from the other fleeing suspect Taylor.

63. Upon information and belief Dooley fired upon the closest and slowest suspect (which was Plaintiff) without a reasonable belief plaintiff posed a threat of imminent death or serious physical injury.

64. The number of shots fired by Dooley was objectively unreasonable.

65. Dooley failed to properly assess and de-escalate the situation in a manner which would bring it under control in a safe manner.
66. Dooley failed to give a proper verbal warning before firing.
67. "Get your bitch ass…" is not a proper verbal warning.
68. Defendant Dooley used objectively unreasonable force against Plaintiff, which exceeded the necessary force warranted to bring the incident under control and take Plaintiff and others into custody.
69. It was unreasonable for Dooley to fire into a fleeing group without specificity of threat, especially in a populated neighborhood area.
70. The conduct of Defendant Dooley constituted excessive force in violation of the Fourth Amendment of the United States Constitution, as incorporated into the Fourteenth Amendment of the United States Constitution as well as the Missouri Constitution.
71. As a direct and proximate cause of Defendants use of excessive force, the Plaintiff suffered permanent and severe injuries.

## COUNT II: FAILURE TO TRAIN AND SUPERVISE resulting in Violation of the Fourth and Fourteenth Amendment of the United States Constitution

72. Plaintiff restates and realleges each preceding paragraph as though fully set forth herein.
73. St. Louis County has a history of practices and policies that deprive individuals of their constitutional rights under the Constitution of the United States and the State of Missouri.

74. More specifically, St. Louis County has a history and practice of enacting knee jerk reaction policies to combat non-existent perceived threats.
75. Upon information and belief, the Teams were developed in the wake of Michael Brown and ongoing civil protests.
76. The Teams were developed without clear guidelines or training policies.
77. Dooley is a member of the Teams created by St. Louis County.
78. The Teams were developed to aggressively interact with the public without clear guidelines or protocol but encouraging a use of force policy.
79. This use of force practice was not being governed with proper management or guidelines resulting in injury to Plaintiff.
80. This use of force practice within the Teams was given a blind eye by management in order for Dooley and other members of the Teams to deprive Plaintiff of his constitutional rights to be free from excessive and potentially deadly force.
81. This practice of force was not only given a blind eye but encouraged within the Teams as well as the St. Louis County Police Department as a whole.
82. As a St. Louis County police officer Dooley received training from St. Louis County.
83. As a member of The Teams Dooley was not trained properly or given clear instructions.
84. As a result of this practice and custom within the Teams as well as St. Louis County, Plaintiff suffered 11 gunshot wounds and almost died.

WHEREFORE, Plaintiff prays for judgment in Count I and II in an amount greater than Fifty Thousand Dollars ($50,000.00), for reasonable attorney's fees, for costs

herein expended, for interest as allowed by law, and for such other and further relief deemed just and proper.

Respectfully submitted,

/s/ Thomas Peterson
Thomas Peterson, Missouri Bar #67188
Niehoff, Peterson, Cortez LLC
818 Layfayette Ave.
St. Louis, MO 63104
Phone: 314-795-3973
Fax: (314) 669-9175
E-mail: Thomaspetersonlaw@gmail.com