# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| MELVIN HARRIS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 4:25-cv-01017-MTS |
| ST. LOUIS COUNTY, *et al.*, | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM AND ORDER

Melvin Harris refused to stop his vehicle for police. As the police gave chase, Harris eventually turned onto a dead-end street in St. Louis County, abandoned his vehicle, and fled on foot with his two passengers, at least one of whom was unlawfully carrying a firearm. During the foot chase, Officer Stanley Dooley shot Harris numerous times. Harris survived, pleaded guilty to felony resisting arrest under Missouri law, and later brought this civil action against Officer Dooley and St. Louis County claiming that they violated his constitutional rights. Now before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint. Doc. [10]. Because the Court concludes that Plaintiff has stated a claim against Officer Dooley in his individual capacity but failed to clear the often-difficult hurdle of pleading a plausible *Monell*[1] claim, the Court will grant Defendants' Motion in part and deny it in part.

**I.      Background**[2]

On June 02, 2020, Plaintiff was driving with two passengers in the City of St. Louis near "protests and civil unrest" related to the recent death of George Floyd. Doc. [8] ¶¶ 16, 18–19.

---

[1] *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978).
[2] These facts are taken from the allegations in Plaintiff's First Amended Complaint. Doc. [8]. Plaintiff has not proven, and at this stage need not have proven, these allegations are true.

Police officers employed by the City of St. Louis began pursuing Plaintiff's vehicle, claiming that someone inside it fired gunshots from it. *Id.* ¶¶ 20, 22. While City officers ultimately discontinued their pursuit, officers assigned to St. Louis County's "Civil Disturbance Response Teams," subdivisions of the St. Louis County Police Department "Special Response Unit," began pursuing Plaintiff's vehicle. *Id.* ¶¶ 6–7, 24. The Teams were comprised of County officers who focused on managing protests and civil unrest, were equipped with "special tactical gear," and "developed and enforced policies and procedures which encourage officers to rapidly escalate use of force against protestors and civilians alike." *Id.* ¶¶ 8–12. Furthermore, the "policies and procedures [of the Teams]," Plaintiff declares, "had no clear structure or guidelines leaving officers improperly trained." *Id.* ¶ 13.

After the County officers continued the chase, Plaintiff's vehicle was forced to stop at a dead-end street, where the vehicle's occupants, including Plaintiff, fled on foot between two houses. *Id.* ¶¶ 25–26. Plaintiff and his passengers, who were ahead of Plaintiff, jumped over a fence behind the two houses and ran toward a wood line. *Id.* ¶¶ 27–30. Plaintiff, who was "clearly unarmed" throughout the foot pursuit, was the last one set to jump over the fence. *Id.* ¶¶ 32–33, 47. Defendant Dooley was directly behind Plaintiff with his firearm drawn and pointed at Plaintiff throughout it. *Id.* ¶¶ 45–46. Plaintiff affirmatively pleads that "Dooley claims one of the individuals from plaintiff's car or plaintiff fired a shot." *Id.* ¶¶ 42, 44–46. Dooley then yelled "get your bitch ass" before firing thirteen shots toward Plaintiff. *Id.* ¶ 36. Eleven shots hit Plaintiff, and he suffered "serious, permanent, and debilitating injuries." *Id.* ¶ 37. Afterwards, police recovered a firearm from the woods, "far" from where Plaintiff was shot. *Id.* ¶ 51. The firearm belonged to one of Plaintiff's passengers, who later pleaded guilty to resisting arrest along with unlawful possession of a firearm. *Id.* ¶¶ 53, 56

After himself pleading guilty to resisting arrest, Plaintiff filed this action in Missouri state court asserting claims under 42 U.S.C. § 1983. Defendants timely removed to this Court under 28 U.S.C. § 1441(a) and moved to dismiss the action. In response, Plaintiff filed a First Amended Complaint as a matter of course. *See* Fed. R. Civ. P. 15(a)(1)(B). The pleading maintains that Defendant Dooley used excessive force in violation of the Fourth and Fourteenth Amendments and that St. Louis County instituted policies and customs that encouraged the use of excessive force by members of the Teams, and that the County failed to properly train and supervise the Team members. Defendants once again seek dismissal of this action, arguing Plaintiff has failed to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

**II.    Discussion**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores*, 588 F.3d 585, 594 (8th Cir. 2009). As it must, the Court accepts the Amended Complaint's well-pleaded facts as true and draws all reasonable inferences in Plaintiff's favor. *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 483 (8th Cir. 2020).

A.    *Plaintiff has stated a plausible claim against Dooley in his individual capacity.*

Defendant Dooley moves to dismiss Plaintiff's § 1983 excessive force claim solely on the basis that he is entitled to qualified immunity, which provides immunity from suit, *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), "insofar as [an official's] conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Holladay*, 859 F.3d 529, 533 (8th Cir. 2017). Accordingly, the Court asks "(1) whether the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) whether the right was clearly established at the time of the deprivation." *Barton v. Taber*, 820 F.3d 958, 963 (8th Cir. 2016) (alterations omitted).

Plaintiff's allegations are sufficient to state a § 1983 claim against Defendant Dooley that survives qualified immunity. Whether a police officer used excessive force in violation of the Fourth Amendment turns on whether the amount of force used was objectively reasonable under the particular circumstances. *Torres v. City of St. Louis*, 39 F.4th 494, 502 (8th Cir. 2022). In determining whether an officer's actions were objectively reasonable, the Court is required to consider the totality of the circumstances, including relevant facts and events leading up to the moment the officer deployed force against the individual and "[o]f course, the situation at the precise time of the shooting . . . [as] it is, after all, the officer's choice in that moment that is under review." *Barnes v. Felix*, 605 U.S. 73, 76, 80 (2025).

Plaintiff alleges that he was clearly unarmed, that Defendant Dooley was immediately behind him, that Dooley pursued Plaintiff with his firearm drawn and raised toward Plaintiff, and that Dooley failed to properly warn Plaintiff before shooting him eleven times. While Plaintiff acknowledges that Defendant Dooley claimed another shot was fired toward officers during the foot chase, drawing all reasonable inferences in Plaintiff's favor, the allegations in Plaintiff's Amended Complaint are sufficient to state an excessive force claim under § 1983 that survives qualified immunity at this early stage. *Cf. Hageman v. Minn. Dep't of Corr.*, No. 22-2098, 2023 WL 4760732, at *1–2 (8th Cir. July 26, 2023) (unpublished per curiam) (recognizing that the differing standards between "dismissal at the summary judgment stage compared to the motion to

dismiss stage" often makes the "dispositive difference").  Based on the facts Plaintiff alleges, taken as true, it is plausible that Plaintiff did not pose a significant threat of death or serious injury to Dooley, other officers, or the public.  *See Moore v. Indehar*, 514 F.3d 756, 762–63 (8th Cir. 2008) (reversing lower court's grant of summary judgment to officer on qualified immunity grounds when evidence showed that the officer had shot an unarmed fleeing suspect, despite the fact that a different fleeing suspect "moved in such a manner as to suggest to [the officer] that [said suspect] might begin shooting").

Based on the facts alleged in the Amended Complaint, a reasonable officer would have known "that the use of deadly force against a fleeing suspect who does not pose a significant threat . . . to the officer or others is not permitted."  *Moore*, 514 F.3d at 763 (citing *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)); *accord Williams*, 27 F.4th at 1352.  Thus, for the foregoing reasons, the Court will deny Defendants' Motion as to Count I against Defendant Dooley in his individual capacity.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." (citation modified)).

B.   *Plaintiff's claim against Dooley in his official capacity is duplicative.*

Defendants further argue that Plaintiff's claim against Dooley in his official capacity should be dismissed, as it is duplicative of Count II, Plaintiff's *Monell* claim against the County.  The Court agrees.  *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent.").  As such, the Court will dismiss Plaintiff's official capacity claim against Dooley.  *See Lokey v. St. Louis County*, 4:19-cv-2475-MTS, 2020 WL 6544240, at *3 (E.D. Mo. Nov. 6, 2020)

(dismissing claim against police chief in his official capacity because claim was redundant of plaintiff's claim against the County).

        C.      *Plaintiff has failed to state a plausible claim against St. Louis County.*

St. Louis County can be liable to Plaintiff under § 1983 only if its policy or custom caused Plaintiff to be deprived of a federal right or if the County failed to adequately train its employees. *See Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014). "Each of these different approaches to liability requires a different analysis." *Morgan v. Fairfield County*, 903 F.3d 553, 565 (6th Cir. 2018). Although Plaintiff labels Count II of his First Amended Complaint "Failure to Train and Supervise," the pleading recites the buzzwords associated with every distinct theory of *Monell* liability. Indeed, the Amended Complaint reflects little effort to identify which theory Plaintiff asserts here. Of course, a complaint need not articulate a legal theory to survive dismissal, but as this Court has observed, when a plaintiff advancing a *Monell* claim fails to proceed with a coherent theory in mind, the pleading typically omits the factual allegations necessary to plausibly show the required elements of municipal liability are met. *White v. City of St. Louis*, 4:25-cv-0031-MTS, 2025 WL 1360703, at *2 (E.D. Mo. May 9, 2025). Simply put, even with a cohesive working theory, *Monell* liability is "rare and difficult to establish." *Stockton v. Milwaukee County*, 44 F.4th 605, 617 (7th Cir. 2022). *See also Henry v. Iron County*, 1:24-cv-0218-MTS, 2025 WL 2780909, at *4 (E.D. Mo. Sept. 30, 2025) (recognizing the standard pleading requirements when applied to *Monell* claims "often prove insurmountable for many plaintiffs"). Here, Plaintiff has failed to plead *facts* sufficient to establish plausible liability under any theory.

To show a violation caused by an official policy, Plaintiff needed to "identify a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the County's officers." *Mitchell v. Saint Louis County*, 160 F.4th 950, 964 (8th Cir. 2025) (citation modified).

- 6 -

The Amended Complaint identifies two specific policies.  One is a standing general order that states "[o]nly the appropriate amount of force necessary to bring an incident under control is authorized." Doc. [8] ¶ 40.  The other sets forth the "parameters for use of nondeadly force." *Id.* ¶ 41 (typecase modified).  Both policies promote—and indeed require—constitutional conduct by officers.  These policies could not plausibly cause Plaintiff's alleged constitutional violation. *See Waters v. Madson*, 921 F.3d 725, 743 (8th Cir. 2019) (noting there must be "a causal link between" an official municipal policy and the alleged constitutional violations).

Plaintiff's other allegations about policies are vague, sweeping, and conclusory.  For example, Plaintiff states that, "[u]pon information and belief, the [Civil Disturbance Response] Teams developed and enforced policies and procedures [that] encouraged officers to rapidly escalate use of force against protestors and civilians alike." *Id.* ¶ 12.  The Court is not convinced that such vague and sweeping allegations of the existence of policy suffice.[3]  *See Mitchell*, 160 F.4th at 964 (noting "sweeping allegation[s]" that amount to "nothing more than a formulaic recitation of the elements" "cannot support a plausible claim"); *Henderson v. Harris County*, 51 F.4th 125, 130 (5th Cir. 2022) (per curiam) (explaining that "to get past the pleading stage," a complaint's description of a policy "cannot be conclusory; it must contain specific facts"); *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015) (dismissing *Monell* claim because plaintiff pleaded only a "general and conclusory allegation" that there was a policy).  But beyond the sweeping, vague nature of the pleaded policy here, Plaintiff also has failed to plausibly plead facts that establish this policy was official policy of the County itself.

---

[3] That is especially true when the vague policy, such as the one Plaintiff describes, does not necessarily call for unconstitutional conduct.  Officers can constitutionally escalate the amount of force used—even rapidly so—when appropriate under the circumstances of a particular case. *Cf. King v. Hendricks Cnty. Comm'rs*, 954 F.3d 981, 985 (7th Cir. 2020) (joined by Barrett, J.) (noting that if an individual "threatens the officer with a weapon, deadly force may be used," "even if a less deadly alternative is available to the officers").

"The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479–80 (1986). Plaintiff pleaded the County's official policies, which mandate compliance with the Constitution. *See* Doc. [8] ¶¶ 40–41. He pleads no facts plausibly showing that a final policymaker—rather than County employees—adopted the vague, sweeping policies to which he merely alludes. *See Hightower v. City of Philadelphia*, 130 F.4th 352, 356 (3d Cir. 2025) ("A policy requires 'an official proclamation, policy or edict by a decisionmaker possessing final authority.'"); *Singletary v. District of Columbia*, 766 F.3d 66, 73 (D.C. Cir. 2014) (recognizing that "liability can attach only if the decision is made by a municipal policymaker, i.e., one with authority to establish governmental policy" (citation modified)); *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984) (en banc) ("Liability must rest on official policy, meaning the [municipal] government's policy and not the policy of an individual official."). For these reasons, Plaintiff has not plausibly shown that the County is liable under the official policy theory of liability.

A custom may also give rise to liability under *Monell* but only if the practice is "so persistent and widespread as to practically have the force of law." *See Moore v. LaSalle Mgmt. Co.*, 41 F.4th 493, 509 (5th Cir. 2022) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)); *accord Miller v. Calhoun County*, 408 F.3d 803, 815 (6th Cir. 2005) ("For a custom to give rise to *Monell* liability, the custom must be so permanent and well settled as to constitute a custom or usage with the force of law." (internal quotations omitted)). Liability under a theory of unofficial custom fails here because Plaintiff has given no facts that show that the County was on notice of any prior incidents of unconstitutional force used by Team members generally, let alone Dooley

specifically. In other words, Plaintiff has not alleged "specific instances or provide[d] specific examples" that could support an inference of an unconstitutional custom. *See Watkins v. City of St. Louis*, 102 F.4th 947, 954 (8th Cir. 2024).

Plaintiff's last hope for County liability, then, is if his facts show that the County failed to adequately train or supervise its employees and that this failure actually caused Plaintiff's constitutional deprivation. When an injury is alleged to be the result of an action of a municipal employee who has not been trained properly, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 405 (1997). This theory of liability, therefore, is a "notoriously difficult theory on which to base a *Monell* claim." *See Allen v. Hays*, 65 F.4th 736, 749 (5th Cir. 2023); *accord Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). *See also Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 599 (7th Cir. 2019) (joined by Barrett, J.) (calling failure-to-supervise and failure-to-train claims "'tenuous' form[s] of *Monell* liability"). Plaintiff needed to plead facts that show the County "received notice of a pattern of unconstitutional acts committed by its employees." *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1216–17 (8th Cir. 2013). He did not do so. And putting aside his many conclusory statements, no factual allegations plausibly show that the County "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996).

## CONCLUSION

Plaintiff has alleged facts that plausibly show that Defendant Dooley violated Plaintiff's rights under the Fourth Amendment. While the evidence may well tell a different story one day, Defendant Dooley is not entitled to qualified immunity on the face of the Amended Complaint.

The Court will deny the Motion as to Count I against Defendant Dooley in his individual capacity. As to Count II, though, Defendants' Motion is well taken. Plaintiff failed to provide the necessary factual allegations to plead a *Monell* claim under any theory of liability. The Court will grant the Motion as to Count II. Count I of this action against Defendant Dooley in his individual capacity remains.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, Doc. [10], is **GRANTED** in part and **DENIED** in part consistent with this Memorandum and Order. The Clerk of Court is respectfully directed to terminate Defendant St. Louis County from this action as well as Defendant Dooley in his official capacity.

Dated this 23rd day of February 2026.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE